UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA MANON,

Plaintiff,

- against -

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

25-cv-8708 (JGK)

Memorandum Opinion and Order

**John G. Koeltl, District Judge:**

The plaintiff, Maria Manon, brings this action pursuant to 42 U.S.C. § 1383(c) (incorporating 42 U.S.C. § 405(g)) to reverse a final decision of the defendant, the Commissioner of Social Security (the "Commissioner"), that the plaintiff was not entitled to a period of disability and Social Security Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). On July 5, 2022, the plaintiff filed an application for DIB and SSI with the Social Security Administration ("SSA"). On August 23, 2024, after a hearing, an Administrative Law Judge ("ALJ") for the SSA denied the plaintiff's application, finding that the plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on August 11, 2025. The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Procedure 12(c), and the plaintiff has cross moved for an order remanding this action to the SSA.

The Court has received the thorough Report and Recommendation of Magistrate Judge Gary R. Jones recommending that the plaintiff's motion be denied, and that the case be dismissed. The plaintiff filed an objection to the Magistrate Judge's Report and Recommendation, and the Commissioner filed a response to that objection. For the following reasons, the Report and Recommendation is **adopted** in its entirety, the Commissioner's motion is **granted**, the plaintiff's motion is **denied**, and the case is **dismissed**.

## II.

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a magistrate judge's report and recommendation to which objection is made is subject to de novo review. See, e.g., McClain ex rel. McClain v. Halter, No. 99-cv-3236, 2001 WL 61977, at *1 (S.D.N.Y. June 5, 2001); DeJesus v. Chater, 899 F. Supp. 1171, 1174–75, (S.D.N.Y. 1995).

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam); Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is "more than a mere scintilla," and is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[1] Richardson v. Perales, 402 U.S. 389, 401 (1971).

The standards governing entitlement to DIB and SSI are well settled. A claimant must show that she is "disabled" to qualify for DIB under Title II and SSI under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. § 423(d)(1)(A) (DIB); 42 U.S.C. § 1382c(a)(3)(A) (SSI).[2] A claimant seeking DIB or SSI is considered disabled if the claimant is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The SSA uses a five-step framework set out by the regulations of the Commissioner to evaluate DIB and SSI claims. See 20 C.F.R. § 416.920. As the Court of Appeals has explained:

> The first step in the sequential process is a decision whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the second step is a decision whether the

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

[2] The definition for "disabled" is the same for DIB and SSI. See Barnhardt v. Walton, 535 U.S. 212, 214 (2002). The determination of disability under Title II for DIB is also similar to the determination of disability for purposes of SSI benefits under Title XVI of the Act. See Ramos v. Apfel, No. 97cv7435, 1999 WL 13043, at *4 n.1 (S.D.N.Y. Jan. 12, 1999). In this Opinion, cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3). See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980).

> claimant's medical condition or impairment is severe. If not, benefits are denied. If the impairment is severe, the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" set forth in ... the [S]ocial [S]ecurity regulations. These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the listed impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's residual functional capacity, i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform alternative occupations available in the national economy. If not, benefits are awarded.

City of New York v. Heckler, 742 F.2d 729, 732 (2d Cir.1984), aff'd sub nom., Bowen v. City of New York, 476 U.S. 467 (1986).

If the claimant establishes that she is disabled under 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner must show that there is still work that the plaintiff could perform in the national economy. See Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008). If the claimant cannot perform work in the national economy, then the claimant's condition qualifies as a disability under the Act. See id.; see also Mejia v. Berryhill, No. 16-cv-6513, 2017 WL 3267748, at *4 (S.D.N.Y. July 28, 2017).

## III.

In this case, the ALJ concluded at step one that the plaintiff has not engaged in substantial gainful activity since July 13, 2018, the alleged onset date. SSA Administrative Record ("SSA Rec.") at 80.[3] At the second step, the ALJ found that the plaintiff suffered from two "severe" impairments under 20 C.F.R. § 416.920(c): rheumatoid arthritis and obesity. SSA Rec. at 81. At the third step, the ALJ found that the plaintiff did not have an impairment or combination of impairments medically equal to impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. SSA Rec. at 81.

At the fourth step, the ALJ concluded that the plaintiff had the residual functional capacity ("RFC") to perform "light work," "except she can: never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, crawl, and/or kneel; occasionally reach, handle, finger, and feel bilaterally; and never work at unprotected heights or around dangerous machinery." SSA Rec. at 82.[4] Then, in accordance with

---

[3] The facts of the case are set forth in the Report and Recommendation of the Magistrate Judge, and familiarity with those facts is assumed.

[4] Pursuant to 20 C.F.R. § 404.1567(b) and 416.967(b), "light work" involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 416.960(b), the ALJ considered whether the plaintiff was able to perform her past relevant work as an office cleaner. Relying on the Department of Labor's Dictionary of Occupational Titles, the ALJ concluded that the plaintiff's physical capacity precluded her from working as an office cleaner, because that job requires more than light physical exertion. SSA Rec. at 85. Relying on the credible testimony of a vocational expert, the ALJ determined that the plaintiff was capable of "making a successful adjustment to other work," such as a "School Bus Monitor," "Furniture Rental Consultant," or "Investigator Dealer Accounts." SSA Rec. at 86–87. Accordingly, the plaintiff's claims for DIB and SSI were denied. SSA Rec. at 87.

On appeal, the Magistrate Judge addressed two arguments made by the plaintiff: (1) that the ALJ's review of the medical evidence was insufficient and underdeveloped; and (2) that the ALJ erred by disregarding the plaintiff's subjective complaints. Report and Recommendation at 7. The Report and Recommendation explains that the ALJ decision was free of legal error and supported by substantial evidence, and none of the plaintiff's arguments warranted a remand.

## IV.

The plaintiff objects to the Report and Recommendation, arguing that the Magistrate Judge: (1) gave a case undue weight when assessing whether the ALJ correctly found moderate impairments with standing and walking

compatible with an RFC to perform light work; (2) mischaracterized the plaintiff's argument about the ALJ's evaluation of medical opinion evidence; (3) failed to address the plaintiff's argument that the ALJ should have further developed the record; and (4) reached the wrong result about the plaintiff's subjective complaints. For the reasons explained below, the plaintiff's objections to the Report and Recommendation are **overruled**.

**A.**

The plaintiff argues that she has a moderate standing and walking limitation, and that the limitation is categorically incompatible with an RFC to perform "light work," because light work requires standing or walking for six hours per workday. 20 C.F.R 404.1567 (b); 20 C.F.R 416.967 (b). Accordingly, the plaintiff raises several objections to the Magistrate Judge's recommendation.

**i.**

As an initial matter, the plaintiff objects to the Magistrate Judge's reliance on Galarza v. Comm'r of Soc. Sec., No. 25-cv-416, 2026 WL 1078558, at *4 (S.D.N.Y. Apr. 21, 2026) (explaining that "[c]ourts in this Circuit have repeatedly held that moderate limitations in standing and walking are consistent with the ability to perform light work"). Neither the court in Galarza nor the Magistrate Judge in this case, however, suggests that light work is universally compatible with moderate standing and walking limitations. The

plaintiff's collection of cases, some of which conclude that light work may be incompatible with the plaintiff's moderate standing and walking limitations, are not universal either. See, e.g., Bienvenido J.P. v. Comm'r of Soc. Sec., 20-cv-9270, 2022 WL 901612, at *6 (S.D.N.Y. Mar. 28, 2022) (concluding that a "moderate limitation with respect to standing may be inconsistent with the conclusion that [the plaintiff in that case] can perform light work" (emphasis added)). The question before the Court is not whether the record could support a different RFC assessment, but rather whether substantial evidence supports the ALJ's RFC assessment in this case. See Biestek v. Berryhill, 587 U.S. 97, 108 (2019) (the substantial evidence inquiry is "case-by-case"). That other courts found moderate limitations to be incompatible with an RFC to perform light work in those cases does not show that the ALJ was required to reach that conclusion in this case.

In this case, the ALJ acknowledged that the plaintiff could not perform the full range of light work, but the ALJ turned to the credible testimony of the vocational expert to determine the occupations that the plaintiff could perform given the plaintiff's specific limitations, and the ALJ found a substantial number of jobs available in those categories. SSA Rec. at 86.

**ii.**

The plaintiff next argues that the Magistrate Judge did not adequately address her argument that the ALJ failed to develop the record as required,

because the ALJ did not inquire into whether the plaintiff's home health aide's report was prepared by or endorsed by the plaintiff's treating physician. The cover letter to the aide's report stated that it was completed with the plaintiff "and/or [the plaintiff's] caregiver," and the report itself noted that Dr. Ravi is the plaintiff's physician. SSA Rec. at 608–09. The plaintiff argues the ALJ therefore should have asked the plaintiff or Dr. Ravi if Dr. Ravi completed or endorsed any part of the report.

The Magistrate Judge did not fail to address the plaintiff's argument as the plaintiff then presented it. Before the Magistrate Judge, the plaintiff argued that the ALJ should have: (1) "considered the persuasiveness of" the aide's report regarding the plaintiff's limitations; and (2) "asked [Dr. Ravi] if he identified such limitations for" the plaintiff. Pl's Brief, ECF No. 18 at 12. The Magistrate Judge found that the ALJ did not err because the record was left open for the plaintiff to submit a report from Dr. Ravi, and there were already other medical opinions in the record that the ALJ found persuasive. On her objection to this Court, the plaintiff now argues that the ALJ should have: (1) "considered the persuasiveness of" the aide's report; and (2) "determine[d] if the findings in the [aide's] report were <u>endorsed</u> by" Dr. Ravi or if Dr. Ravi himself "completed the [aide's] report." Pl's Objection, ECF No. 22 at 3 (emphasis added).

In view of either argument, the ALJ did not fail to develop the record. ALJs must "'loo[k] fully into the issues' themselves," Carr v. Saul, 539 U.S. 83, 91 (2021) (quoting 20 C.F.R. § 404.900(b)), but need not turn over every stone, see Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Id. In this case, the aide's report was a single-page form outlining the "responsibilities of the aide who will provide [the plaintiff] with personal care assistance," and the only reference to Dr. Ravi was a form entry naming Dr. Ravi as the plaintiff's physician. SSA Rec. at 608. In a cover letter, the aide organization explained to the plaintiff that this "Paraprofessional Plan of Care" was "completed by the Elderplan/HomeFirst Assessment Nurse together with you and/or your caregiver during Re-Assessment." SSA Rec. 609. It is not obvious that "caregiver" in this context could reasonably mean "treating physician," and nothing in the report indicates the endorsement of Dr. Ravi. Moreover, the plaintiff does not dispute the ALJ "possesse[d] a 'complete medical history'" when it made its decision. Rosa, 168 F.3d at 79 n.5. Therefore, the ALJ was "under no obligation to seek additional information" about the aide's report before denying the plaintiff's claims. Id.

In any event, the record shows that the ALJ did reach out to Dr. Ravi but was "unable to obtain" information from him. SSA Rec. at 120, 124. For example, the ALJ's medical records exhibit list notes an "Unsuccessful Development Attempt to Secure Medical" information from Dr. Ravi, and that the ALJ received no medical examination report ("MER") from Dr. Ravi "for [the] dates requested." SSA Rec. at 91.

It is also unclear whether Dr. Ravi was even the plaintiff's "treating physician." As far as the record shows, the plaintiff saw Dr. Ravi once in 2018 and once in 2023, when the plaintiff stopped seeing Dr. Ravi altogether. See SSA Rec. at 26 (February 7, 2024 hearing transcript) ("I don't see Dr. Ravi anymore since . . . almost a year ago" because "I changed my insurance and Dr. Ravi doesn't carry my insurance."). The only records that the ALJ received from Dr. Ravi were one laboratory report and one visit summary from 2018. In 2023, Dr. Ravi's facility advised the SSA that they had no other medical records for the plaintiff. The ALJ gave the plaintiff an opportunity to supplement the record with more information from Dr. Ravi. The plaintiff provided none, and the plaintiff's counsel stated that the record was complete.

Moreover, although ALJs are permitted to "evaluate [the] persuasiveness" of a medical opinion based on "relationship with the claimant" and the source's "specialization," ALJs no longer give deference to a treating source or "specific evidentiary weight to medical opinions." 20 C.F.R.

§ 404.1520c (a), (b)(2). It is therefore unclear how even a treating-physician's endorsement of a form for home health assistance would require a reasonable factfinder to discount the persuasive value of other medical reports. See Brault v. SSA, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam).

**iii.**

Relatedly, the plaintiff contends that the Magistrate Judge failed to address an argument that the ALJ should have sought to clarify what Dr. Paz and Dr. Healy meant by "moderate limitations" in their reports, SSA Rec. at 88–89, because that term is ambiguous and could preclude standing or walking for six hours per workday.

That argument is also without merit. Unlike the cases on which the plaintiff relies, the ALJ in this case found Dr. Paz and Dr. Healy's reports to be persuasive to varying degrees and did not find either report to be "inadequate or incomplete." 20 C.F.R. § 416.919p(b) (noting that "[i]f the report is inadequate or incomplete," the ALJ will "contact the medical source"); cf. Wells v. Comm'r of Soc. Sec., No. 21-cv-879, 2024 WL 759316, at *3 (E.D.N.Y. Feb. 23, 2024) (holding the ALJ "improperly substitute[d] his . . . own opinion for that of a physician" by rejecting the source's report—and all the other medical opinions—as entirely unpersuasive and unhelpful based on the vagueness of the term "moderate" without first contacting the medical source for clarification). Moreover, the ALJ in this case did not find it "difficult

to determine the extent to which" Dr. Paz and Dr. Healy's "opinions are consistent with the medical evidence of record." Wells, 2024 WL 759316, at *3. To the contrary, as the plaintiff concedes, the ALJ in this case expressly found the opinions of Dr. Paz and Dr. Healy to be "supported by" their findings and "consistent with the medical record." SSA Rec. at 84–85. That is not a rejection of the opinions of Dr. Paz and Dr. Healy, and "moderate limitations" is not inconsistent with light work. See Galarza, 2026 WL 1078558, at *4. Therefore, unlike in Gutierrez v. Kijakazi, 21-cv-3211, 2022 WL 16856426 (S.D.N.Y. Sep. 29, 2022), there is no "absence of [] medical opinion[s] to support [the] ALJ's finding as to [the] plaintiff's ability to perform [light work]." Id. at *19.

Furthermore, the ALJ's decision was supported by the opinions of two of the SSA's review physicians, who both explained that the plaintiff could "[s]tand and/or walk (with normal breaks) for a total of[] [a]bout 6 hours in an 8 hour workday." SSA Rec. at 43, 49, 60, 67, 69. "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault, 683 F.3d at 448. Therefore, there is substantial record evidence that supports the ALJ's finding that the plaintiff could perform light work with six hours of standing or walking in a day. See id.

**B.**

The plaintiff also argues that the ALJ failed to evaluate properly her subjective statements and disagrees with the Magistrate Judge's contrary assessment.

The ALJ expressly analyzed the consistency of the plaintiff's allegations against the medical record—precisely what the regulations require—and concluded that the plaintiff's allegations were not "entirely consistent" with the record. See Social Security Ruling 16-3p ("16-3p Ruling"), Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (S.S.A. Mar. 9, 2016). The ALJ's analysis thoroughly considered several of the factors set forth in the 16-3p Ruling, including the "location, duration, frequency, and intensity of pain or other symptoms," "[f]actors that precipitate and aggravate the symptoms," the "type, dosage, effectiveness, and side effects of any medication [the plaintiff] takes or has taken to alleviate pain or other symptoms," "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms," and the plaintiff's "functional limitations and restrictions due to pain or other symptoms." 16-3p Ruling, 2016 WL 1119029, at *7 (noting that not all factors will be relevant or discussed); see SSA Rec. at 83–84. The plaintiff's contention that the ALJ's analysis was mere "critique" is therefore without merit.

Nor did the ALJ suggest that the plaintiff's infrequent treatment caused her symptoms. Rather, the ALJ found that the plaintiff's subjective assertions about the "intensity, persistence, and limiting effects of . . . her symptoms" did not "entirely" align with an objective record that showed only infrequent treatment. SSA Rec. at 83 ("[The plaintiff] reported that she has '10/10' pain 'all over' which is 'always present.'").

It was also not improper for the ALJ to consider evidence that the plaintiff sought treatment inconsistently, or to find that "[t]he medical evidence [] seems to suggest that [the plaintiff] was not adherent to her prescribed medication." SSA Rec. at 84. The proceeding in this case is entirely distinct from—and not in conflict with—the proceeding that is required to refuse benefits when a disabled person does not "follow prescribed treatment that we expect would restore his or her ability to engage in substantial gainful activity." Social Security Ruling 18-3p, Titles II and XVI: Failure to Follow Prescribed Treatment, 2018 WL 4945641, at *3 (S.S.A. Oct. 2, 2018). In this case, the ALJ was expressly entitled to "find [that] the alleged intensity and persistence of [the plaintiff's] symptoms are inconsistent with the overall evidence of record" "if the frequency or extent of the treatment sought by the [plaintiff] is not comparable with the degree of the [plaintiff's] subjective complaints, or if the [plaintiff] fails to follow prescribed treatment that might improve symptoms." 16-3p Ruling, 2016 WL 1119029, at *8.

C.

To the extent the plaintiff's objections included any other arguments, they are merely conclusory and generalized arguments. In such a case, the Court will review the Report and Recommendation for clear error. See Watson v. Astrue, No. 08-cv-1523, 2010 WL 1645060, at *1 (S.D.N.Y. April 22, 2010). A Report and Recommendation is "clearly erroneous" when the Court, upon reviewing the entire record, is "left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006).

In this case, the Court has reviewed the Report and Recommendation and finds no error.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Magistrate Judge's Report and Recommendation is **adopted** in its entirety, the Commissioner's motion for judgment on the pleadings is **granted**, the plaintiff's motion for remand is **denied**, and the Complaint is **dismissed**.

The Clerk is directed to enter judgment and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**November 10, 2026**

**John G. Koeltl**
**United States District Judge**